SNAPPER, INC., Plaintiff-Appellee,

v.

Steven I. REDAN, Sheila A. Redan, et al., Defendants-Appellants.

No. 97-9095.

United States Court of Appeals,

Eleventh Circuit.

April 5, 1999.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:97-CV-375-ODE), Orinda D. Evans, Judge.

Before ANDERSON and BARKETT, Circuit Judges, and HILL, Senior Circuit Judge.

ANDERSON, Circuit Judge:

This appeal presents an issue of first impression in this circuit: whether, since the 1996 amendment to 28 U.S.C. § 1447(c) (1994), a district court's remand order is reviewable when the court issued the order to enforce a contractual forum selection clause. Because we conclude that appellate review is available in this context, we consider the district court's interpretation of the forum selection clause on the merits. We affirm.

## I. FACTS

This case arises out of the business relationship between Snapper, Inc., a Georgia corporation, and two of its distributors, a New Jersey corporation known as KPM Distributors, Inc. and a New York corporation known as KPMNY Distributors, Inc. Snapper, a manufacturer of lawn, garden, and snow equipment, entered into an agreement with KPM Distributors in the late 1960's pursuant to which KPM Distributors marketed Snapper products in New Jersey. The relationship apparently proved successful because, in 1981, Snapper requested that the principals of KPM Distributors form KPMNY Distributors to market Snapper products in New York. The principals agreed. This new arrangement also seems to have been mutually satisfactory, for the two distributors (collectively, "KPM") reached another agreement with Snapper in 1991 to expand their distribution territory into the New England states.

As part of the New England expansion agreement, on October 30, 1991, three officers of KPM and their spouses entered into six identical security agreements, pursuant to which each individual assumed personal liability for all of KPM's obligations to Snapper. The six individuals thus made liable are Steven I. Redan, Sheila A. Redan, Anthony C. Troisi, Sandra A. Troisi, Donald A. Ehrgott, and Ruby Ehrgott (the "Guarantors"). A short time later, according to the Guarantors, Snapper demanded that KPM purchase more inventory than KPM could sell to its dealers so that Snapper would not have to close a manufacturing plant. Then, in 1995, the Guarantors claim that Snapper required KPM to liquidate its inventory to make room for new Snapper products. On August 22, 1995, Snapper terminated its relationship with KPM, citing the failure of KPM to pay for equipment provided by Snapper valued at approximately $2,000,000. That same day, KPM signed a termination agreement that included a provision partially forgiving KPM's debt.

On September 16, 1996, KPM filed a complaint in the United States District Court for the District of New Jersey against Snapper (the "New Jersey action"). In the suit, apparently still ongoing, KPM seeks $15,000,000 in damages and alleges that Snapper violated numerous provisions of New Jersey statutory and common law. Snapper answered on October 25, 1996, and filed a counterclaim based on the same alleged $2,000,000 debt that Snapper cited as its reason for terminating KPM's distributorship.

Snapper did not file a third-party claim in New Jersey against the Guarantors on this debt. Instead, on November 12, 1996, it instituted this litigation in the Superior Court of Georgia, Dekalb County on a $647,160.46 debt of KPM,[1] naming the Guarantors, but not KPM, as defendants. The Guarantors timely and properly removed the case to the United States District Court for the Northern District of Georgia on February 11, 1997. Shortly thereafter, they filed a motion to change venue, seeking to have the case transferred to New Jersey to be consolidated with the New Jersey action. On March 7, 1997, Snapper moved to remand the case to state court and opposed the motion to change venue.

---

[1]One might suspect, as KPM alleges, *see* Brief on Behalf of Appellants at 5, that this claim is based on the alleged $2,000,000 debt, less the debt forgiveness supposedly contained in the termination agreement.

On September 29, 1997, the district court granted Snapper's motion and remanded the case to the state court. In a brief opinion, the district court held that the forum selection clause in each of the security agreements signed by the Guarantors constituted a waiver of their right to remove. The court noted that the terms of the forum selection clause provided for litigation in the Georgia state courts or in the United States District Court for the Northern District of Georgia, at Snapper's election, and that the Guarantors waived any rights accruing to them by virtue of their domicile. Concluding that removal premised on diversity jurisdiction was a right based on domicile, the district court held that the Guarantors could not remove this action under the contractual provision. The district court therefore remanded the action to state court and dismissed the motion to change venue as moot. The Guarantors timely filed a notice of appeal. We hold today that the district court's interpretation of the forum selection clause is subject to appellate review and affirm the order on the merits.

## II. REVIEWABILITY

There are two potential obstacles to appellate review in this case. First, we must consider whether the order satisfies the final judgment rule, which ordinarily bars consideration of non-dispositive rulings in an ongoing judicial proceeding. *See Catlin v. United States,* 324 U.S. 229, 233-34, 65 S.Ct. 631, 633-34, 89 L.Ed. 911 (1945). Second, even if the final judgment rule is satisfied, we must determine whether § 1447(d) of the Judicial Code bars appellate review. Because we conclude that the district court's order is final, and because we conclude that the exception to § 1447(d) first enunciated by the Supreme Court in *Thermtron Prods., Inc. v. Hermansdorfer,* 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), is applicable, we find that we have jurisdiction over this appeal.

A.   *Finality Issues*

Our holding that the district court's remand order satisfies the finality requirement is mandated by a very recent decision of this court, so holding on indistinguishable facts. *See Florida Polk County v. Prison*

3

*Health Servs., Inc.,* --- F.3d ----, Nos. 96-2577, 96-3072 (11th Cir. Mar. 26, 1999). Thus, we turn to the §

1447(d) issue.

B.       *Section 1447(d) and the Scope of Section 1447(c)*

The second potential obstacle to appellate review in this case is 28 U.S.C. § 1447(d) (1994), which

provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable

on appeal or otherwise...."[2] Notwithstanding the provision's broad language, the Supreme Court has held that

§ 1447(d) bars appellate review only where the remand order is based upon the grounds specified in §

1447(c).  *See Thermtron,* 423 U.S. at 346, 96 S.Ct. at 590.  In the instant case, the remand order that

appellants urge us to review is based upon a forum selection clause.  Thus, the issue before us is whether a

remand order based upon a forum selection clause fits within one of the grounds specified in § 1447(c).

Accordingly, we must identify the scope of § 1447(c).

1.       *Language of Section 1447(c)*

We begin, of course, with consideration of the language of the statute itself.  The current version of

§ 1447(c), as amended in 1996, provides in relevant part as follows:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction
> must be made within 30 days after the filing of the notice of removal under section 1446(a).  If at any
> time before final judgment it appears that the district court lacks subject matter jurisdiction, the case
> shall be remanded.

28 U.S.C.A. § 1447(c) (West Supp.1998).  As is apparent from the text, § 1447(c) implicitly recognizes two

bases upon which a district court may—and in one case must—order a remand:  when there is (1) a lack of

subject matter jurisdiction or (2) a defect other than a lack of subject matter jurisdiction.  Because the first

ground dealing with subject matter jurisdiction is not at issue here,[3] the key term to which we must give effect

---

[2]Section 1447(d) exempts from this general bar a remand order "pursuant to section 1443."  28 U.S.C.
§ 1447(d) (1994).  Section 1443 provides for removal of civil rights cases and is not implicated in this
case.  *See* 28 U.S.C. § 1443 (1994).

[3]The Supreme Court has expressly declared that interpretation of a forum selection clause is not a
jurisdictional determination, and thus cannot affect a court's subject matter jurisdiction.  *See M/S Bremen*

4

is "defect."  Black's Law Dictionary defines "defect" as "[t]he want or absence of some legal requisite; deficiency;  imperfection;  insufficiency."  Black's Law Dictionary 418 (6th ed.1990).  Similarly, Webster's defines it as "[w]ant or absence of something necessary for completeness or perfection;  deficiency." Webster's New International Dictionary of the English Language 686 (2d ed.1953).  The "legal requisites" of removal are found in the removal statutes and include, *inter alia,* those enunciated in § 1446(a) (the filing requirements) and § 1446(b) (the timeliness requirement).  The failure to comply with these express statutory requirements for removal can fairly be said to render the removal "defective" and justify a remand pursuant to § 1447(c).

Other grounds for remand exist, however, that are external to the removal process and do not depend on any "defect" in the removal itself.  The most common examples of these grounds arise in the contexts of forum selection clauses, abstention, and supplemental jurisdiction.  A remand based on a forum selection clause depends on an adjudication of the meaning of the clause, a determination that is external to the removal process.  The ultimate determination that the clause does not permit further adjudication in that particular federal forum does not render the removal "defective" in any ordinary sense of the word;  it merely means that the federal court has held the parties to the terms of their agreement, as with any other contractual adjudication.  Similarly, a determination that a federal court should abstain in a particular case or that it should refuse to exercise supplemental jurisdiction over pendent state claims after dismissal of all federal claims does not mean the removal was defective. Rather, such determinations involve external considerations such as issues of federal/state comity.  We conclude that, under the most reasonable reading of the statute,

---

*v. Zapata Off-Shore Co.,* 407 U.S. 1, 12, 92 S.Ct. 1907, 1914, 32 L.Ed.2d 513 (1972).  Snapper nowhere challenges this holding, but argues that the district court *believed* that the forum selection clause divested the court of subject matter jurisdiction, so that the dismissal was actually based on a lack of subject matter jurisdiction, which is clearly a ground provided for in § 1447(c).  We reject Snapper's reading of the district court's order, so we do not need to address that line of cases holding that an appellate court must look only to the district court's characterization of the basis for its remand order, without regard to the correctness thereof.  *See, e.g., New v. Sports & Recreation, Inc.,* 114 F.3d 1092, 1096 (11th Cir.1997). The real question, which we consider in detail below, is whether a remand based on a forum selection clause is one based on a "defect."

5

a remand based on a "defect" does not encompass one premised on a court's interpretation of a forum selection clause.

One might take an expansive view of the definition of "defect" such that it would include bases for remand external to the removal process such as those described in the previous paragraph. Doing so, however, would essentially make "defect" synonymous with "any remandable ground." This reading would render the term "defect" superfluous.[4] Moreover, such a broad interpretation would constitute a radical departure from well-established law and practice, *see infra* Part II.B.2, significantly undermining established concepts of abstention and supplemental jurisdiction. Remand would still be permissible on the grounds of abstention or supplemental jurisdiction, but only if raised within thirty days of removal. However, the need for a remand on the basis of supplemental jurisdiction[5] will almost always arise only after the expiration of thirty days, and the same will often be true with regard to abstention. *See* David D. Siegel, Commentary on 1996 Revision of Section 1447(c), *in* 28 U.S.C.A. § 1447, at 69 (West Supp.1998). We do not doubt Congress's authority to make such a startling departure from prior law, but this departure is not mandated by the language of the statute. Rather, we think that the more reasonable construction of the statute is that the term "defect" refers to removal defects.

2.       *Historical Interpretation of § 1447(c)*

Our interpretation of § 1447(c) is reinforced by the historical interpretation of the statute, i.e., by an understanding of the two versions of the statute that preceded the current version. Beginning in 1948, Congress has amended the removal provisions three times. As part of a revision of the Judicial Code,

---

[4]This is so because there would be no difference between this understanding of the statute and one that instead began "A motion to remand on any ground whatsoever other than lack of subject matter jurisdiction...."

[5]The supplemental jurisdiction doctrine was judicially created, and Congress codified it in 1990. *See* 28 U.S.C. § 1367 (1994). However, if Congress really meant for § 1447(c) to impose the thirty day time limit on remands based on "any remandable ground whatsoever," the alternative statutory ground of § 1367(c) might not suffice to exempt supplemental jurisdiction from the thirty day time limit.

6

Congress consolidated and recodified the removal provisions in 1948. *See* Act of June 25, 1948, Chapter 646, 62 Stat. 939 (1948). Due to numerous drafting errors,[6] Congress quickly passed a corrective amendment. *See* Act of May 24, 1949, Ch. 139, § 84, 63 Stat. 102 (1949). The combination of these Acts produced the first version of § 1447(c) which provided in relevant part: "If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case...." 28 U.S.C. § 1447(c) (1946 ed. Supp. III) (current version at 28 U.S.C.A. § 1447(c) (West Supp.1998)) [hereinafter "1948 version"].

The critical question under the 1948 version concerned the definition of improvident removal.[7] Notwithstanding the potential breadth of the term "improvident," courts limited the scope of the improvident removal basis for remand by anchoring the definition in errors in the removal process. For example, the Fifth Circuit held that "[r]emoval cannot have been improvident if all procedural requirements ... have been satisfied." *In re Merrimack Mut. Fire Ins. Co.,* 587 F.2d 642, 645 n. 3 (5th Cir.1978) (citations omitted). The Fifth Circuit continued: "A district court may remand a case as being 'improvidently' removed only if one of the statutory, non-jurisdictional requirements for removal has not been satisfied." *Id.* at 647 n. 8 (citations omitted). Similarly, the Tenth Circuit found that the 1948 version did not authorize a remand because the remand "[did] not concern jurisdiction or any *legal defect* in the removal." *Sheet Metal Workers Int'l Ass'n v. Seay,* 693 F.2d 1000, 1005 (10th Cir.1982) (emphasis added). The court expanded on this point by citing

---

[6]The initial legislation contained some 174 errors and was referred to as "one of the worst pieces of draftsmanship in all history." Rhonda Wasserman, *Rethinking Review of Remands: Proposed Amendments to the Federal Removal Statute,* 43 Emory L.J. 83, 103 n. 86 (1994) (citations omitted) (internal quotation marks omitted) (quoting Book Note, 36 Minn. L.Rev. 117, 118 (1951)).

[7]Although the statutory phrases "removed improvidently" and "without jurisdiction" were joined with the conjunction "and," courts and commentators consistently interpreted the provisions in the disjunctive, thus establishing two independent grounds for remand. *See, e.g., FDIC v. Alley,* 820 F.2d 1121, 1123 (10th Cir.1987); *Robertson v. Ball,* 534 F.2d 63, 65 n. 2 (5th Cir.1976); *see also Thermtron,* 423 U.S. at 344, 96 S.Ct. at 589 (using language suggesting a disjunctive interpretation: "the District Court's order was based on grounds wholly different from *those* upon which § 1447(c) permits remand" (emphasis added)).

with approval other cases that upheld remand orders based on non-jurisdictional grounds as "examples of the courts interpreting 'improvidently' to mean improperly in the sense of procedurally defective." *Id.* at 1005 n. 8. Finally, the Seventh Circuit interpreted the term "improvidently" in the same way: "it is logical and reasonable to interpret the term to mean noncompliance with Congress' specific and detailed statutory provisions." *Rothner v. City of Chicago,* 879 F.2d 1402, 1411 (7th Cir.1989).

Of particular relevance to our case, judicial decisions under the 1948 version uniformly held that a remand based on a forum selection clause did not implicate a removal defect, did not stem from an "improvident" removal, was not a remand based on a ground specified in § 1447(c), and therefore was not

a remand insulated from appellate review by § 1447(d).[8] Judicial decisions were likewise uniform with regard to remands in the contexts of abstention[9] and supplemental jurisdiction.[10]

---

[8]*See Milk 'N' More v. Beavert,* 963 F.2d 1342, 1344 (10th Cir.1992);  *Karl Koch Erecting Co. v. New York Convention Ctr. Dev. Corp.,* 838 F.2d 656, 658—59 (2d Cir.1988);  *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.,* 741 F.2d 273, 276-77 (9th Cir.1984);  *cf. Clorox Co. v. United States Dist. Court,* 779 F.2d 517, 520 (9th Cir.1985) (reviewing remand order based on purported waiver of removal contained in an employee handbook).

        In *Pelleport* and subsequent cases in the Ninth Circuit, that court has relied not just on *Thermtron,* but also on the Supreme Court's decision in *City of Waco v. United States Fidelity & Guar. Co.,* 293 U.S. 140, 55 S.Ct. 6, 79 L.Ed. 244 (1934). *See, e.g., Pelleport,* 741 F.2d at 276-77.  In *Waco,* the Supreme Court held that the general rule of non-reviewability of remand orders did not preclude an appellate court from reviewing legal determinations that the district court made prior to its remand order.  As a result, the *Waco* Court reviewed the district court's order dismissing the United States from the action and held that this order was in error.  While the case would still be remanded, the state court was no longer bound by the district court's dismissal of the United States from the suit.  *Pelleport* used *Thermtron* to extend this analysis to permit review of remand orders when they are based on substantive determinations of contract law.  Some of the other circuits rely to a greater or lesser extent on *Pelleport,* as it was the first case to permit review of a remand order based on a forum selection clause;  thus, these cases might be read as implicitly incorporating its reliance on *Waco.* Because we resolve this case exclusively on the basis of the *Thermtron* analysis, we decline to address the *Pelleport* extension of *Waco.*

[9]*See Corcoran v. Ardra Ins. Co.,* 842 F.2d 31, 33-34 (2d Cir.1988);  *Ryan v. State Bd. of Elections,* 661 F.2d 1130, 1134 (7th Cir.1981);  *see also Bennett v. Liberty Nat'l Fire Ins. Co.,* 968 F.2d 969, 970 (9th Cir.1992) (quoting the 1948 version and citing to *Thermtron,* but nowhere stating when the remand at issue was entered).

[10]*See In re Life Ins. Co.,* 857 F.2d 1190, 1193 n. 1 (8th Cir.1988) (concluding that review of remand order entered several months prior to 1988 amendment of § 1447(c) was reviewable, but failing to specify whether it was considering the 1948 version or the amended version);  *Price v. PSA, Inc.,* 829 F.2d 871, 873-74 (9th Cir.1987);  *In re Romulus Community Schs.,* 729 F.2d 431, 435 (6th Cir.1984);  *Cook v. Weber,* 698 F.2d 907, 908-10 (7th Cir.1983);  *In re Greyhound Lines, Inc.,* 598 F.2d 883, 884-85 (5th Cir.1979);  *cf. Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 354-55 & n. 11, 108 S.Ct. 614, 621 & n. 11, 98 L.Ed.2d 720 (1988) (affirming order remanding pendent state claims while recognizing that there is no statutory authority for such action, thereby implicitly recognizing that appellate review is not barred);  *Fox v. Custis,* 712 F.2d 84, 89-90 & n. 4 (4th Cir.1983) (vacating district court judgment on state law claims and ordering remand to state court while recognizing that there was no statutory authority for such action). *Carnegie-Mellon* resolved a circuit split involving the question of whether a remand outside the scope of the removal statutes was permissible.  The permissibility question could only be reached, however, when review of the remand was not barred by § 1447(d).  On this antecedent question of reviewability, as the text indicates, the cases were unanimous.

Although most courts adopted the narrow interpretation of the term "improvident," as described above, the term itself was obviously vulnerable to a much broader interpretation. This vulnerability, together with a few cases that provided some support for a broad interpretation in other contexts,[11] left some uncertainty surrounding the proper scope of the "removed improvidently" ground for remand. Against this background, Congress clarified the interpretive difficulties engendered by the 1948 version, specifically endorsing the narrow interpretation of the judicial decisions described above. *See* Judicial Improvements and Access to Justice Act of 1988, Pub.L. 100-702, Title X, § 1016(c), 102 Stat. 4670 (1988). Thus, the 1988 Amendment discarded the vague term "improvidently" in favor of a more explicit reference to "any defect in removal procedure."[12] As amended in 1988, § 1447(c) read in relevant part:

> A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under § 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded....

28 U.S.C. § 1447(c) (1994) (current version at 28 U.S.C.A. § 1447(c) (West Supp.1998)) [hereinafter "1988 version"].[13]

---

[11]These cases generally arose in the context of waivers of removal inferred from the removing party's conduct in the state court. *See, e.g., Schmitt v. Insurance Co.,* 845 F.2d 1546 (9th Cir.1988); *In re Weaver,* 610 F.2d 335 (5th Cir.1980); *see also Rothner,* 879 F.2d at 1421 (Easterbrook, J., dissenting) (suggesting that the term "improvident" encompasses more than simple procedural defects and citing *Schmitt* and *Weaver* ).

[12]In addition, the 1988 Amendment specifically acknowledged the disjunctive nature of "removed improvidently" and "without jurisdiction," thereby endorsing the case law holding that § 1447(c) provided for two separate and independent grounds for remand. *See supra* n. 7.

[13]We do not mean to suggest that the minimal uncertainty regarding the definition of "improvidently" was the primary impetus for the amendment; to the contrary, as we have described, the cases were fairly consistent with respect to the scope of the 1948 version. The primary change in the statute was the imposition of the 30-day limitation on raising motions to remand based on procedural defects. This new requirement would have sharply proscribed the authority to remand in the contexts of abstention, forum selection clauses, and supplemental jurisdiction if the "improvidently" language remained and courts began to adopt the broad interpretation described above. *See supra* n. 11. The change in language that we note is therefore best understood as a congressional ratification of the consistent judicial practice in order to preclude any misapplication of the new time limit. As the Judiciary Committee said:

> The amendment is written in terms of a defect in "removal procedure" in order to avoid

Following the obvious intentions of Congress, courts in most contexts had no trouble interpreting the 1988 language "defect in removal procedure" as perpetuating the narrow interpretation that courts had applied to the 1948 version.[14] Accordingly, courts were unanimous in holding that remands in the contexts of forum selection clauses,[15] abstention,[16] and supplemental jurisdiction[17] were not remands based upon defects in

> any implication that remand is unavailable after disposition of all federal questions leaves only State law questions that might be decided as a matter of ancillary or pendent jurisdiction or that might instead be remanded.

H.R.Rep. No. 100-889 at 72 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 6033.

[14]The best statement of this conclusion is found in *In re Medscope Marine Ltd.,* 972 F.2d 107 (5th Cir.1992). In that case, the Fifth Circuit held "that section 1447(c) is a mere reconstitution of the existing statute and jurisprudence, with the addition of a strict time limitation on the privilege of filing remand motions," so that "the 'removed improvidently' language of pre-1988 section 1447(c) was replaced, without intent to change the meaning, with the 'defect in removal procedure' in the current section 1447(c)." *Id.* at 109—10. The Seventh Circuit's decision in *Rothner* also noted that the change in phrasing was legally insignificant, albeit using this conclusion to justify its interpretation of the 1948 version. *See Rothner,* 879 F.2d at 1411; *cf.* Michael E. Solimine, *Removal, Remands, and Reforming Federal Appellate Review,* 58 Mo. L.Rev. 287, 311 (1993) ("[I]t is reasonable to interpret the text and history of new Section 1447(c) as having no substantive impact on the availability of *Thermtron*-like review of remand orders." (footnote omitted)).

[15]Every circuit to have considered the issue has concluded that appellate review is permissible when the remand is based on a forum selection clause because that is not a ground stated in § 1447(c). *See Florida Polk County v. Prison Health Servs., Inc.,* --- F.3d ----, Nos. 96-2577, 96-3072 (11th Cir. Mar. 26, 1999); *SBKC Serv. Corp. v. 1111 Prospect Partners, L.P.,* 105 F.3d 578, 580-81 (10th Cir.1997); *McDermott Int'l, Inc. v. Lloyds Underwriters,* 944 F.2d 1199, 1201 (5th Cir.1991); *Foster v. Chesapeake Ins. Co.,* 933 F.2d 1207, 1210-11 (3d Cir.1991); *In re Delta Am. Re Ins. Co.,* 900 F.2d 890, 892 (6th Cir.1990); *Regis Assocs. v. Rank Hotels (Management) Ltd.,* 894 F.2d 193, 194-95 (6th Cir.1990); *see also Travelers Ins. Co. v. Keeling,* 996 F.2d 1485, 1488 n. 2 (2d Cir.1993) (holding remand based on a forum selection clause reviewable, but discussing only jurisdictional ground of § 1447(c), not "defect in removal procedure" ground).

> As indicated above, *see supra* n. 8, the Ninth Circuit also invoked *Waco* in its *Pelleport* decision, and its decisions under the 1988 version continued to recognize *Pelleport*'s authority. *See, e.g., Northern Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.,* 69 F.3d 1034, 1035 n. 1 (9th Cir.1995); *Ferrari, Alvarez, Olsen & Ottoboni v. Home Ins. Co.,* 940 F.2d 550, 553-54 (9th Cir.1991). Other circuits also continue to cite *Waco* and *Pelleport* on occasion.

[16]*See Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 116 S.Ct. 1712, 1718, 135 L.Ed.2d 1 (1996); *In re Burns & Wilcox, Ltd.,* 54 F.3d 475, 477 (8th Cir.1995); *In re Abbott Labs.,* 51 F.3d 524, 525 (5th Cir.1995); *Garamendi v. Allstate Ins. Co.,* 47 F.3d 350, 354 (9th Cir.1995), *aff'd sub nom. Quackenbush,* 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996); *Minot v. Eckardt-Minot,* 13 F.3d 590, 592 (2d

11

removal procedure, and thus were not remands provided for in § 1447(c).  Therefore, such remands were not

subject to the 30-day time limit and appellate review of the remand order was not barred by § 1447(d).

Especially with regard to remands in the abstention and supplemental jurisdiction contexts, the result that they

were not subject to the 30-day time limit comports with common sense.  It is unlikely that a remand on either

basis would be ripe within such a short time frame.[18]

Although the 1988 language of § 1447(c) worked well in the contexts of forum selection clauses,

abstention, and supplemental jurisdiction, the language proved more troublesome for courts in another

context.  When diversity jurisdiction is the only ground for federal subject matter jurisdiction in a case

initially filed in state court, such a case "shall be removable only if none of the parties in interest properly

---

Cir.1994); *Doughty v. Underwriters at Lloyd's London,* 6 F.3d 856, 860 (1st Cir.1993); *Foster v. Mutual Fire, Marine & Inland Ins. Co.,* 986 F.2d 48, 50 n. 3 (3d Cir.1993); *Melahn v. Pennock Ins., Inc.,* 965 F.2d 1497, 1500-02 (8th Cir.1992).

[17]*See Trans Penn Wax Corp. v. McCandless,* 50 F.3d 217, 223-25 (3d Cir.1995); *Jamison v. Wiley,* 14 F.3d 222, 231-33 (4th Cir.1994); *Burks v. Amerada Hess Corp.,* 8 F.3d 301, 303-04 & nn. 3-4 (5th Cir.1993); *In re Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, Local No. 173,* 983 F.2d 725, 727 (6th Cir.1993); *Albertson's, Inc. v. Carrigan,* 982 F.2d 1478, 1479-80 (10th Cir.1993); *In re Surinam Airways Holding Co.,* 974 F.2d 1255, 1257 (11th Cir.1992); *J.O. v. Alton Community Unit Sch. Dist. 11,* 909 F.2d 267, 270 (7th Cir.1990).

[18]The mere fact that the statutory time limitation on raising motions to remand does not apply does not mean that non-1447(c) remands are necessarily authorized at any time.  Prior to the enactment of the statutory limitation, motions for remand were required to be brought within a reasonable time frame.  *See, e.g., Ayers v. Watson,* 113 U.S. 594, 596-99, 5 S.Ct. 641, 641-43, 28 L.Ed. 1093 (1885) (refusing to remand a case that had clearly been untimely removed because the objecting party did not move for remand until after the Supreme Court had issued its writ of error); *see also Rothner,* 879 F.2d at 1411 n. 7 (citing *Ayers* for the proposition that non-1447(c) remands still must be raised in a reasonable time frame).  This rule continues for remands not covered by § 1447(c).  *See Foster v. Chesapeake,* 933 F.2d at 1213 n. 8 (concluding that § 1447(c) does not apply to remands based on forum selection clauses, but stating that "a district court in the proper exercise of its discretion may deny as untimely a non-procedural defect, non-jurisdictional motion to remand if made at an unreasonably late stage of the federal litigation").  Because a forum selection clause is generally apparent from the time of removal, a reasonable time may be significantly shorter in that context than in the abstention or supplemental jurisdiction contexts.  One might even argue that federal courts should borrow the 30-day requirement from § 1447(c) in the forum selection clause context.  We need not decide that question in this case, however, because the motion for remand in this case was clearly timely.  Removal occurred on February 11, 1997, and Snapper moved for remand on March 7, 1997.

12

joined and served as defendants is a citizen of the state in which such action is brought." 28 U.S.C. § 1441(b) (1994). When a motion for remand was made relying upon the fact that one of the defendants was a citizen of the forum state, courts had some difficulty under the 1988 version concluding that the remand motion was based upon a defect in removal procedure. Rather, the defect seemed more substantive. Recognizing that it would make little sense to exempt such a remand from the 30-day time limit of § 1447(c), most courts held that the 30-day time limit of § 1447(c) did apply. *See, e.g., Korea Exch. Bank v. Trackwise Sales Corp.,* 66 F.3d 46, 50-51 (3d Cir.1995); *In re Shell Oil,* 932 F.2d 1518, 1523 (5th Cir.1991); *cf. Pierpoint v. Barnes,* 94 F.3d 813, 817-19 (2d Cir.1996) (refusing to review a case in which the district court based its remand on the non-removability of DOHSA claims because such a remand was one based on a defect in removal procedure, despite its seemingly substantive nature). In so doing, however, these courts had to take an expansive view of the term "procedure," as some of the courts acknowledged. *See, e.g., Shell Oil,* 932 F.2d at 1522 (recognizing that, although removal in violation of § 1441(b) was a defect in removal procedure, such a defect was more substantive than the "more clearly procedural" defect of failing to remove timely in violation of § 1446(b)). Because other courts refused to take such an expansive view, a conflict in the circuits developed. *See LaMotte v. Roundy's, Inc.,* 27 F.3d 314, 316 (7th Cir.1994) (noting this circuit split). *Compare Hurt v. Dow Chem. Co.,* 963 F.2d 1142, 1145-46 (8th Cir.1992) (finding that the presence of a resident defendant in a removed case is not a waivable procedural defect, but is a lack of removal jurisdiction) *with Shell Oil,* 932 F.2d at 1523.

It is in this context that the 1996 version must be understood. The current version made a rather minor textual alteration to the first sentence. The amendment eliminated the "removal procedure" language, leaving merely the term "defect." *See* United States District Court, Removal Procedure, Pub.L. No. 104-219, 110 Stat. 3022 (1996). The first sentence of the 1996 version reads as follows:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days of the filing of the notice of removal under § 1446(a).

13

28 U.S.C.A. § 1447(c) (West Supp.1998). The revised language would seem to address neatly the issue that had concerned courts under the 1988 version, suggesting that a removal in violation of § 1441(b) is subject to the 30-day time limit.

Thus, an understanding of previous versions of § 1447(c), and how courts interpreted them, provides strong support for our interpretation of the 1996 version of § 1447(c), namely that the term "defect" refers to removal defects, and is not synonymous with "any remandable ground." The foregoing history provides the most reasonable explanation for Congress to have changed the first sentence of the statute from "any defect in removal procedure" to merely "any defect." It further demonstrates that the change in language was not meant to bring within its scope remands in the contexts of forum selection clauses, abstention, or supplemental jurisdiction. Thus, this statutory history supports the interpretation to which we were led by our initial analysis of the language of the statute itself.

3.      *Legislative History of § 1447(c)*

The sparse legislative history of the 1996 version also supports our interpretation. There were no hearings in the House Judiciary Committee "because it viewed the Bill as technical and noncontroversial." H.R.Rep. No. 104-219, at 2 (1996), *reprinted in* 1996 U.S.C.C.A.N. 3417, 3418. The House Report contains just one paragraph in the section entitled "Background and Need for the Legislation," which notes that the intent of the 1988 version was "not entirely clear," and that the 1996 version "clarifies the intent of Congress." *Id.* In addition, the Report contains a letter from the Congressional Budget Office ("CBO") estimating the cost of the litigation in which the CBO Director wrote that "according to the Administrative Office of the United States Courts ..., the Bill would affect only a small number of cases because most courts are already interpreting the law in a manner consistent with" the 1996 version. *Id.* at 3, *reprinted in* 1996 U.S.C.C.A.N. at 3419. As we noted in our discussion of the 1948 and the 1988 versions, courts have been unanimous in holding that remands in the contexts of forum selection clauses, abstention, and supplemental jurisdiction are not encompassed within § 1447(c), with the result that such remands are neither subject to the 30-day time

14

limit nor insulated from appellate review by § 1447(d). Our interpretation of the 1996 version of the statute perpetuates this well-established case law consistent with the apparent intentions of Congress.

On the other hand, the contrary view—i.e., an expansive interpretation of the term "defect" so as to include any remandable ground other than lack of subject matter jurisdiction—would constitute a radical departure from well-established law and practice. It would mean, contrary to unanimous case law, that remands in the contexts of forum selection clauses, abstention, and supplemental jurisdiction would be subject to the 30-day time limit and appellate review would be barred by § 1447(d). The legislative history, though sparse, indicates clearly that Congress had no intention of making such a marked change in the legal landscape.

4. *Case Law*

In discussing the history of the previous versions of § 1447(c), we noted that the cases, both under the 1948 version and the 1988 version, have uniformly held that a remand to enforce a forum selection clause is not a remand on a ground specified in § 1447(c), and therefore that appellate review is not barred under § 1447(d). We also noted that the same is true with respect to remands in the analogous contexts of abstention and supplemental jurisdiction. Very few cases governed by the 1996 amendment of § 1447(c) have squarely addressed the effect of the 1996 amendment on this case law.

The only appellate case that we have found that has discussed the change in language at any length is *Hudson United Bank v. LiTenda Mortgage Corp.,* 142 F.3d 151 (3d Cir.1998). In that case, the district court remanded pendent state claims after dismissing the federal claims. After discussing the amendments to § 1447(c) since *Thermtron,* the court considered the effect of these amendments on the scope of the grounds for remand provided in § 1447(c): "Rather than take this change in language as a wholesale rejection of *Thermtron* and a dramatic expansion of § 1447(d), we will assume that Congress did not mean to upset the *Thermtron* limits on § 1447(d), and that they remain in effect unchanged by the intervening textual

15

modifications to § 1447(c)." *See id.* at 156 n. 8. The court found support for this holding in the same legislative history that we cited in Part II.B.3, above.

The Eleventh Circuit has only obliquely addressed the effect of the 1996 amendment. In *New v. Sports & Recreation, Inc.,* 114 F.3d 1092, 1095-96 (11th Cir.1997), the court refused to review a remand based upon a jurisdictional determination because of the bar of § 1447(d). In dicta, the court stated that remands based on removal defects were also insulated from appellate review under the 1988 version of § 1447(d), noted the 1996 amendment, and suggested that the amendment does not seem to effect any change. *See New,* 114 F.3d at 1095 n. 5.[19]

Although sparse, the case law arising under the 1996 amendment follows the well-established prior law. Thus, it lends support to our conclusion that the amendment has no effect on the scope of remands authorized by § 1447(c), and therefore no effect on the scope of remand orders with respect to which § 1447(d) bars appellate review.

5.      *Conclusion*

For the foregoing reasons, we conclude that § 1447(d) does not bar our review of the instant remand order, which was based upon a forum selection clause. We conclude that the instant remand order was not based upon a ground specified in § 1447(c), and therefore § 1447(d) does not apply. Our conclusion is based on the most reasonable reading of the language of the 1996 version of § 1447(c), and in particular, on the most reasonable reading of the term "defect." It is also supported by the history of the prior versions of the statute, by the legislative history, and by the well-established case law from which it is clear that Congress had no intention of departing. Finally, our interpretation is the only one in harmony with common sense. If applicable, the 30-day time limit might be the death knell of remands of pendent state claims; a decision

---

[19]*See also In re Uniroyal Goodrich Tire Co.,* 104 F.3d 322, 324 (11th Cir.1997) (noting the 1996 amendment).

about remanding in the context of supplemental jurisdiction will virtually never be ripe within such a limited time frame, and in large part, the same is true with respect to remands based upon principles of abstention.

## III. INTERPRETATION OF THE CLAUSE

We turn now—finally—to the merits of this dispute. We hold that the clause grants to Snapper the absolute right to choose the forum for litigation among the stated Georgia state or federal courts or any other court of competent jurisdiction. The Guarantors contend that a contractual waiver of removal rights must be "clear and unequivocal" and that the provision at issue does not meet this high threshold. We reject this standard. Applying ordinary principles of contract interpretation, we conclude that the Guarantors have waived the right to remove.

The clause at issue in this case states that:

The Undersigned agrees that any legal action or proceeding with respect to this instrument may be brought in the courts of the State of Georgia or the United States District Court, Northern District of Georgia, Atlanta Division, all as Creditor may elect. By execution of this instrument, the Undersigned hereby submits to each such jurisdiction, hereby expressly waiving whatever rights may correspond to it by reason of its present or future domicile. Nothing herein shall affect the right of Creditor to commence legal proceedings or otherwise proceed against the Undersigned in any other jurisdiction or to serve process in any manner permitted or required by law. In furtherance of the foregoing, the Undersigned hereby appoints the Secretary of the State of Georgia as its agent for service of process.

*Snapper, Inc. v. Redan,* Civ. No. 1:97-cv-0375-ODE at 3 (N.D.Fla. Sept. 16, 1997) (remand order) (quoting para. 16 of Security Agreement). The Guarantors argue that a reasonable interpretation of this clause is that it operates only to waive any objections by the Guarantors to personal jurisdiction in the stated fora. Furthermore, even if Snapper's interpretation would be favored under ordinary contract principles, they argue that the federal courts require waivers of the statutory right of removal to be clear and unequivocal. *See, e.g., Regis Assocs. v. Rank Hotels (Management) Ltd.,* 894 F.2d 193, 195 (6th Cir.1990). The district court held, and Snapper argues on appeal, that the Guarantors' interpretation was not reasonable and that it constituted a clear and unequivocal waiver. The court reached this conclusion by noting that diversity jurisdiction depended on the Guarantors' domicile and that the right to remove asserted in this case therefore was also

17

dependent on domicile. Because the clause applied to "*whatever* rights" based on the Guarantors' domicile, the court held that the Guarantors had waived *all* such rights, including the right to remove.

We need not decide whether the clause rises to the level of a clear and unequivocal waiver because we do not agree that such a high standard is required or desirable. Admittedly, there is some confusion in the circuits about whether a waiver of the right to remove must be "clear and unequivocal." As the Third Circuit has demonstrated, however, the cases that have applied this standard have arisen when the removing party participated in actions in the state court prior to removal that might be interpreted as a waiver of the right to remove. *See Foster v. Chesapeake Ins. Co.,* 933 F.2d 1207, 1217 n. 15 (3d Cir.1991). Such litigation-based waivers must be distinguished from the contractual waivers at issue in this case and in *Foster.*

In the context of litigation-based waivers, the clear and unequivocal standard makes sense. Otherwise, parties would be put in the difficult position of, on the one hand, not taking any action in state court in order to preserve definitively the right to remove and, on the other hand, running the risk of a default judgment unless they take steps to defend the action in state court. When the issue is contractual waiver, however, this concern is not present. Indeed, requiring such a high standard, as the *Foster* court noted, goes against the general trend of interpreting the removal statutes against removal and probably springs from the outdated notion that forum selection clauses are disfavored.[20] *See id.* Thus, in the context of removal based solely on diversity jurisdiction,[21] ordinary contract principles govern a contractual waiver.

---

[20]The Guarantors claim that the rejection of the clear and unequivocal holding in *Foster* is "directly contrary" to our decision in *Citro Florida, Inc. v. Citrovale, S.A.,* 760 F.2d 1231 (11th Cir.1985). *See* Reply Brief on Behalf of Appellants at 20. The Guarantors misread *Citro Florida.* Removal was not even at issue in *Citro Florida,* and the phrase "clear and unequivocal" is nowhere to be found in the opinion. Our holding in that case, as discussed below, reached the unremarkable conclusion that a forum selection clause did not mandate exclusive jurisdiction in Brazil. *See Citro Florida,* 760 F.2d at 1231-32.

[21]The Third Circuit has distinguished *Foster* in the context of removal under the Foreign Sovereign Immunities Act. *See In re Texas E. Transmission Corp. PCB Contamination Ins. Coverage Litig.,* 15 F.3d 1230, 1243 (3d Cir.1994). The court noted that 28 U.S.C. § 1441(d), which provides for removal of any action brought against a foreign state, should be interpreted broadly "[g]iven Congress' unusually strong preference for adjudication of claims against foreign states in the federal court system." *Id.* This federal interest was not present in *Foster,* and it is equally not present here. Thus, we need not address what

18

Other circuits generally either have assumed implicitly that ordinary principles of contract interpretation govern in the context of contractual waivers or have applied a watered down version of the clear and unequivocal standard. Thus, for example, the Second Circuit has found waiver even when the forum selection clause did not expressly waive removal because "the parties' inclusion of the forum-selection clause makes little sense unless it precludes removal...." *Karl Koch Erecting Co. v. New York Convention Ctr. Dev. Corp.,* 838 F.2d 656, 659 (2d Cir.1988). A Ninth Circuit case similarly made no mention of the clear and unequivocal standard in holding that the language in an employee handbook, included because federal regulations required it, did not amount to a waiver of removal. *See Clorox Co. v. United States Dist. Court,* 779 F.2d 517, 521 (9th Cir.1985).[22] *But see Regis,* 894 F.2d at 195 (finding that a contractual waiver of removal was not clear and unequivocal).[23]

Applying ordinary contract principles to the case at hand, we readily conclude that the Guarantors have waived their right to remove. As the district court stated, the waiver of "whatever rights" encompasses all rights. Even if this provision did not sweep so broadly, however, it certainly encompasses more than one right. The Guarantors have not suggested other rights to which this clause might apply other than personal jurisdiction. Removal is the most obvious, if not the only, candidate for an additional right based on domicile that might be covered by this clause. Additionally, the clause provides for the action to be brought in one of the fora "all as Creditor may elect." Allowing removal from the forum that Snapper (i.e., the Creditor) did

---

standard should apply in this circuit when such an interest is present.

[22]The Ninth Circuit's subsequent decision in *RTC v. Bayside Developers,* 43 F.3d 1230, 1240 (9th Cir.1994) explicitly adopted the clear and unequivocal test in the context of litigation-based waivers, but made no mention of its *Clorox* decision, presumably viewing it, as we do, as arising in a wholly different context.

[23]The Tenth Circuit purported to follow the Sixth Circuit's decision in *Regis* by invoking the clear and unequivocal standard for a contractual waiver in *Milk 'N' More v. Beavert,* 963 F.2d 1342, 1346 (10th Cir.1992). That court found a valid waiver in a contract that stated that "venue shall be proper under this agreement in Johnson County, Kansas" because the provision was "reasonably clear," *id.,* suggesting that the court's application of the standard is so watered down as to be virtually indistinguishable from the ordinary interpretive tools that we employ today.

elect to the forum that Snapper specifically did not elect defies the express language of the contract and unjustifiably diminishes the importance of this specific language.[24]

---

[24]The Guarantors also argue that the federal courts distinguish between "mandatory" and "permissive" forum selection clauses. *See, e.g., Citro Florida, Inc. v. Citrovale, S.A.,* 760 F.2d 1231, 1232 (11th Cir.1985) (distinguishing "between mere 'consent to jurisdiction' clauses and 'mandatory' clauses"); *Caldas & Sons, Inc. v. Willingham,* 17 F.3d 123, 127 (5th Cir.1994); *Blanco v. Banco Indus. de Venez., S.A.,* 997 F.2d 974, 979 (2d Cir.1993). They correctly note that these cases require quite specific language before concluding that a forum selection clause is mandatory, such that it dictates an exclusive forum for litigation under the contract. They also correctly note that these decisions refuse to dismiss a suit or transfer an action to the stated forum when the clause is deemed permissive. They err, however, in concluding that these decisions hold that permissive clauses are unenforceable in the sense that the clauses are effectively read out of the contract.

In seizing on the mandatory/permissive distinction, the Guarantors ignore the context in which this distinction was relevant. In all of the cases cited by the Guarantors, the party seeking enforcement of the clause was seeking dismissal of the suit when the plaintiff had chosen to bring suit in a forum not stated in the clause. In *Citro Florida,* for example, Citro Florida sued Citrovale in federal court in Florida for breach of contract. *See Citro Florida,* 760 F.2d at 1231. Citrovale moved to dismiss the suit because of a clause in the contract stating "[p]lace of jurisdiction is Sao Paulo/Brazil." We specifically concluded that the clause was enforceable, but that it did not compel jurisdiction in Brazil. The clause merely permitted either party to bring suit in Brazil without allowing the opposing party to object; it did not go further and preclude suit in any other forum. *See id.* at 1232. Likewise, in *Caldas & Sons,* the provision at issue provided that "[t]he laws and courts of Zurich are applicable." *Caldas & Sons,* 17 F.3d at 127 (internal quotation marks omitted). The defendants sought to have the suit dismissed, claiming that this provision required the parties to conduct all litigation in Zurich. The Fifth Circuit rejected this argument, holding that the provision permitted, but did not require, litigation in Zurich. *See id.* at 127-28.

These cases do not stand for the simplistic proposition that permissive forum selection clauses are per se unenforceable. *See Florida Polk County v. Prison Health Servs., Inc.,* --- F.3d ----, Nos. 96-2577, 96-3072 (11th Cir. Mar. 26, 1999) (enforcing a forum selection clause similar to the one in the instant case). Indeed, it would border on the absurd to enforce only those forum selection clauses that operate to displace contractually the normal rules of venue and personal jurisdiction to the greatest extent, and not to enforce those that only minimally displace federal procedure. In each of these cases, the court simply interpreted the forum selection clause at issue and concluded that it did not extend as far as the moving party had argued. The "permissive" label used by these courts was not inherently decisive, and we refuse to make it so in this case.

In any event, as we have shown above, the provision at issue in this case gives Snapper an absolute right to choose the forum. The contract may be considered "permissive" in that it specifically allows Snapper to select the Georgia state courts, the federal district court for the Northern District of Georgia, or any other appropriate jurisdiction. The contract is "mandatory" as to the Guarantors, however, because it requires an absolute submission by them to the jurisdiction of whichever of these fora that Snapper chooses.

20

IV. CONCLUSIONS

We conclude that the district court's remand order is a final order that is appealable under the *Thermtron* exception to the general bar on reviewability found in § 1447(d). Interpreting the forum selection clause at issue under ordinary contract principles, we hold that the Guarantors have waived their right to remove this action to federal court.[25] The judgment of the district court remanding the case to the Superior Court of Georgia, County of Dekalb is

AFFIRMED.[26]

---

In response to the Guarantors' reliance on the mandatory/permissive distinction, Snapper argues that Georgia law, which makes no such distinction, applies. In light of our conclusion that federal law also does not make such labels decisive, the result is the same under either Georgia or federal law. *See Antec Corp. v. Popcorn Channel, L.P.,* 225 Ga.App. 1, 482 S.E.2d 509, 510 (1997). Therefore, we need not address the question of which jurisdiction's law to apply.

[25]In light of our disposition of this case, we need not address other arguments of the parties not discussed in this opinion.

[26]In affirming the district court's remand order in the instant case, we necessarily acknowledge the district court's inherent power to remand a removed case when appropriate to enforce a forum selection clause. Courts have uniformly assumed that district courts have such inherent authority to remand since the Supreme Court's decision in *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), though most courts have not expressly acknowledged it. In *Carnegie-Mellon,* the case was removed to federal court on the basis of federal question jurisdiction. After elimination of the sole federal claim, the district court remanded to the state court the remaining pendent state law claims. The Court granted certiorari to resolve a split among the circuits as to whether a district court had the power to remand a removed case in the absence of specific statutory authority. *Compare In re Romulus Community Schs.,* 729 F.2d 431, 440 (6th Cir.1984), *Fox v. Custis,* 712 F.2d 84, 89 n. 4 (4th Cir.1983), *and Hofbauer v. Northwestern Nat'l Bank of Rochester,* 700 F.2d 1197, 1201 (8th Cir.1983) (permitting such remands), *with Cook v. Weber,* 698 F.2d 907, 909—10 (7th Cir.1983), *and In re Greyhound Lines, Inc.,* 598 F.2d 883, 884 (5th Cir.1979) (refusing to permit such remands). *See also In re Merrimack Mut. Fire Ins. Co.,* 587 F.2d 642, 644 (5th Cir.1978) (holding that § 1447(c) "states the *exclusive* grounds for remand" (citation omitted)). In holding that district courts did have such discretion to remand, the Court noted that a remand of pendent state law claims was not encompassed within either of the two express provisions for remand in the removal statutes, *see* 28 U.S.C. §§ 1441(c), 1447(c), but nevertheless held that such congressional "silence cannot sensibly be read to negate the power to remand...." *Carnegie-Mellon,* 484 U.S. at 354, 108 S.Ct. at 621. In so holding, the Court clarified language from its decision in *Thermtron Prods., Inc. v. Hermansdorfer,* 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), which might otherwise have suggested that a district court was without authority to remand on a ground not specified in the removal statutes. According to the Court, this proposition holds only when, as in *Thermtron,* the district court has no authority to decline to hear the removed case, i.e., no authority to eliminate "the case from its docket, whether by a remand or by a dismissal." *Id.* at 356, 108 S.Ct. at 622;

*see also Foster,* 933 F.2d at 1214 (holding that *Carnegie-Mellon* "clearly overruled *Thermtron* to the extent that *Thermtron* held that only statutory grounds for remand are authorized"). In contrast, a district court had "undoubted discretion to decline to hear" the pendent state law claims at issue in *Carnegie-Mellon;* thus, the Court identified the issue in the case as being "whether the district court may decline jurisdiction through a remand as well as through a dismissal." *Carnegie-Mellon,* 484 U.S. at 356, 108 S.Ct. at 622. In holding that district courts do have power to remand such cases, the Court noted that such discretion "enables district courts to deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness and comity which underlie the pendent jurisdiction doctrine." *Id.* at 357, 108 S.Ct. at 623. In *Foster,* the Third Circuit, following the reasoning of *Carnegie-Mellon,* held that a remand based on a forum selection clause was not authorized by § 1447(c), but was nevertheless lawful pursuant to the district court's inherent power. *See Foster,* 933 F.2d at 1214—16; *see also McDermott Int'l, Inc. v. Lloyds Underwriters,* 944 F.2d 1199, 1203 (5th Cir.1991) (noting, in a case involving a forum selection clause, that *Carnegie-Mellon* "established that remand is appropriate when a district court has discretion to dismiss a case"). The Seventh Circuit applied the same principles to a remand based upon a waiver by the conduct of the removing party, a context that the court perceived as being substantially the same as a contractual waiver pursuant to a forum selection clause. *See Rothner v. City of Chicago,* 879 F.2d 1402, 1417 (7th Cir.1989); *see also id.* at 1420 (Easterbrook, J., dissenting) (agreeing with the majority that such an inherent power to remand exists).

Like the Third Circuit and the Seventh Circuit, we have no doubt that the rationale of *Carnegie-Mellon* applies in the instant context, and that district courts have the inherent power to remand a removed case when it is appropriate to do so to enforce a forum selection clause. Indeed, in *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 116 S.Ct. 1712, 1718, 135 L.Ed.2d 1 (1996), the Supreme Court held that a remand on the basis of abstention was nonstatutory—i.e., not based on grounds specified in § 1447(c)—but nevertheless assumed that "federal courts have the power to dismiss or remand cases based on abstention principles." *Id.* at 1728.

22