[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11405
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-00634-RLV

PNC BANK, NATIONAL ASSOCIATION,
SUCCESSOR TO RBC BANK (USA),
f.k.a. RBC Centura Bank,

Plaintiff-Appellee,

versus

GVTG, LLC,
THOMAS C. GENTRY,
GENE VENESKY,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(November 14, 2014)

Before JORDAN, ROSENBAUM and KRAVITCH, Circuit Judges.

PER CURIAM:

GVTG, LLC (GVTC), Thomas Gentry, and Gene Venesky (collectively "the defendants") appeal the district court's grant of summary judgment in favor of PNC Bank, N.A. (PNC) in a diversity suit for breach of contract. For the reasons that follow, we affirm.

I.

In July 2004, PNC's predecessor-in-interest, RBC Centura Bank,[1] executed a promissory note (the Note) evidencing a $1,035,000 commercial loan to the defendants. GVTG, the Borrower, agreed to repay the loan in full in addition to any accrued interest, with the outstanding balance of the Note immediately due and payable upon default. Defendants Gentry and Venesky each executed a Commercial Guaranty, individually guaranteeing payment of all sums due under the Note. The Note was renewed on three separate occasions, with the parties signing a "Change in Terms Agreement" at each renewal. The Note eventually matured on December 31, 2012.

As relevant to this appeal, the Note contained the following provisions:[2]

GOVERNING LAW. This Note shall be governed by, construed and enforced in accordance with federal law and the laws of the State of

---

[1] PNC purchased RBC Centura Bank in 2012 and is the present holder of the Note.
[2] Each "Change in Terms Agreement" contained virtually identical provisions.

South Carolina.  This Note has been accepted by Lender in the State of South Carolina.

CHOICE OF VENUE. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Charleston County, State of South Carolina.

The Note, as well as each "Change in Terms Agreement," also called for an award of attorney's fees to the Lender in the event of collection of "not less than fifteen percent (15%) of the amount owing on this Note."

After GVTG defaulted under the terms of the Note, PNC filed suit against the defendants in the Northern District of Georgia, seeking the recovery of $1,034,722.83 in unpaid principal, accrued interest of $9,010.71 as of February 26, 2013, with additional interest to accrue until judgment, as well as late fees in the amount of $51,981.17.  PNC also sought "attorneys' fees equal to 15% of the outstanding principle and accrued interest."  The defendants responded by filing a motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(3), seeking to enforce the choice-of-venue clause in the Note and litigate the dispute in South Carolina.  The district court denied the motion, concluding that the venue provision was a permissive rather than a mandatory clause.  Because PNC had elected not to file suit in South Carolina, dismissal was not proper under the terms of the forum-selection clause.

3

After the defendants failed to timely respond to PNC's motion for summary judgment, the district court issued a show-cause order. The defendants in turn moved the court for a stay so that they could depose James H. White, PNC's Asset Resolution Manager. They also argued that a stay would be beneficial to allow the parties an opportunity to reach a settlement. The court rejected both arguments and denied the request for a stay. The court then granted PNC's motion for summary judgment, highlighting that although the defendants disputed the specific amount of late fees and accrued interest, they had failed to submit any evidence to challenge PNC's calculations.

In the instant appeal, the defendants argue that: (1) venue was not proper in federal court because the parties had contractually agreed to litigate all disputes in a South Carolina state court; (2) the district court erred by granting attorney's fees in accordance with South Carolina law, even though PNC cited to Georgia law in its complaint; and (3) the grant of summary judgment was in error because PNC did not properly authenticate the amounts due for late fees and accrued interest, and the defendants had insufficient time to complete discovery.

## II.

This appeal involves multiple standards of review. We review a district court's ruling under Rule 12(b)(3) "with some measure of deference." *Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1238-39 (11th Cir. 2012).

4

"This court reviews an award of attorney's fees for abuse of discretion; nevertheless, that standard of review still allows us to closely scrutinize questions of law decided by the district court in reaching a fee award." *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1304 (11th Cir. 2001) (citation omitted). We review *de novo* a district court's grant of summary judgment, viewing all facts and reasonable inferences in the light most favorable to the nonmoving party. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* "[W]e accord district courts broad discretion over the management of pre-trial activities, including discovery and scheduling." *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001).

III.

A. <u>Choice-of-Venue Provision</u>

The defendants first argue that the district court erred by denying their motion to dismiss based on improper venue because the parties contractually agreed to litigate the dispute in a South Carolina state court.

Under general contract principles, the plain meaning of a contract's language governs its interpretation. *Belize Telecom, Ltd. v. Belize*, 528 F.3d 1298, 1307 & n.11 (11th Cir. 2008). "The court must look at the contract as a whole, the parties,

5

and the purpose of the agreement to best determine the intent of the parties in interpreting the agreement." *Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011). This court and others often characterize forum-selection clauses as either "permissive" or "mandatory." *Id.* "A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere," whereas "[a] mandatory clause . . . 'dictates an exclusive forum for litigation under the contract.'" *Id.* (quoting *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1262 n.24 (11th Cir. 1999)).

The forum selection clause at issue here, found in the July 2004 note, reads as follows: "CHOICE OF VENUE. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Charleston County, State of South Carolina." The guaranties executed by Gentry and Venesky contained virtually identical clauses to that in the Note. Based on the plain meaning of the language at issue, the forum selection clause is permissive, as opposed to mandatory, because the terms of the agreement allow the Lender to make an election. *Slater*, 634 F.3d at 1330. Thus, the clause permits suit—upon PNC's election—in Charleston County and requires that the defendants submit to suit there, but it does so without precluding litigation in any other forum. *See id.*

In this case, PNC opted to file suit in another forum, and nothing in the contract language prohibits such a choice. To give the language a different effect

6

would "unjustifiably diminish[]" its importance. *Snapper, Inc.*, 171 F.3d at 1262 (discussing a forum selection clause that, by its terms, gave a creditor a choice of fora). Accordingly, the district court properly denied the defendants' motion to dismiss based on improper venue.

B. Attorney's Fees

The defendants next argue that the district court erroneously awarded PNC attorney's fees under South Carolina law despite PNC moving for fees under Georgia law. They highlight that Georgia and South Carolina calculate the award of attorney's fees in breach-of-contract suits differently.

In the first instance, PNC never moved for attorney's fees pursuant to Georgia law. In its complaint, PNC notified the defendants "in writing that the provisions in the Note relating to attorneys' fees and legal costs will be enforced, pursuant to O.C.G.A. § 13-1-11[.]" But that statute does not create a right to fees. Instead, it governs the enforcement of contractual rights. *See* O.C.G.A. § 13-1-11(a) ("Obligations to pay attorney's fees upon any note or other evidence of indebtedness . . . shall be valid and enforceable and collectable as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity"). Here, PNC's entitlement to attorney's fees stems from the terms of the Note, which call for attorney's fees in an amount of "not less than fifteen percent (15%)" of the outstanding principle in the event of a collection.

7

In diversity cases, the choice-of-law rules of the forum state determine what law governs, *American Family Life Assurance Co. of Columbus, Georgia v. United States Fire Co.*, 885 F.2d 826, 830 (11th Cir. 1989), and under Georgia law "contract actions are regulated by the law of the state where the contract was made when matters of execution, interpretation, or validity are at issue," *Wallace v. Harrison*, 304 S.E.2d 487, 489 (Ga. Ct. App. 1983). Here, the Note was "accepted" in South Carolina and thus, the laws of that state govern our analysis.

As such, we turn to consider whether a contractual provision awarding a fixed percentage of attorney's fees is enforceable under South Carolina law. We conclude that it is. *See, e.g., Dedes v. Strickland*, 414 S.E.2d 134, 137 (S.C. 1992) (holding that "[w]ith regard to [] notes which provide for attorneys' fees at a specific rate in the event collection becomes necessary, it is a well established principle of law that where there is a contract providing for such, the amount of attorneys fees is governed by the contract."); *Citizens & S. Nat'l Bank of S.C. v. Easton*, 427 S.E.2d 640, 641 (S.C. 1993) (reversing the denial of fees on the ground that language in the note and guaranties awarded "reasonable attorney's fees of 15% of the outstanding principal and interest"). Thus, the district court did not err in awarding PNC attorney's fees in accordance with the terms of the Note.

C. Accrued Interest and Late Fees

8

Lastly, the defendants allege that PNC "did not discharge its burden of authenticating its calculations for late fees and accrued interest" in its motion for summary judgment.  Additionally, they contend that they should have been granted additional time to depose White, PNC's Asset Resolution Manager.

Here, the defendants do not dispute the principal balance due, the methodology for computing interest, or the payments on the Note as listed in PNC's business records.  Rather they claim that PNC listed two different figures for the amount of accrued interest due on the Note.  Specifically, they highlight that $130,660 "appeared on five pages of PNC Bank's business records," and this number did not match up with the $131,783.45 figure listed in White's affidavit attached to PNC's summary judgment motion.  But the $130,660 figure is labeled as the "G/L balance" in PNC's original business records and represents an internal accounting notation denoting certain write-offs to the loan balance.  Thus, it does not pertain to the accrued interest on the Note.  Similarly, although the defendants challenge PNC's calculation of late fees, they offer nothing to dispute the methodology for computing late fees.  *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (explaining that speculation or conjecture from a party cannot create a genuine issue of material fact).

We are also unpersuaded by the defendants' allegation that they did not have an adequate opportunity to depose White.  They fail to offer any explanation as to

9

why they did not conduct any discovery during the four-month discovery period. Moreover, the defendants never moved to reopen discovery in the district court even after PNC attached White's affidavit to its motion for summary judgment. As such, the district court did not abuse its discretion by refusing to stay its ruling on PNC's summary judgment motion.

**AFFIRMED.**